## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## PADUCAH DIVISION

| | | |
|---|---|---|
| **HEATHER SPEES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action, Case No.:** _5:08CV-73-R_ |
| **v.** | ) | |
| | ) | **JURY DEMAND** |
| **JAMES MARINE, INC. and JAMESBUILT, LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## COMPLAINT

COMES NOW the Plaintiff, Heather Spees, by and through her undersigned counsel, and for her Complaint states as follows:

### NATURE OF THE COMPLAINT

1.    This is a civil action arising under the laws of the United States and of the State of Kentucky, and is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.*, the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010 *et seq.*

### THE PARTIES

2.    Plaintiff, a female, is a resident of Ballard County, Kentucky.  Plaintiff was, at all relevant times, an employee of Defendants James Marine, Inc. and Jamesbuilt, LLC at their facility in Paducah, Kentucky.

3.    Defendant James Marine, Inc. is a Kentucky corporation with its principal place of business at 4540 Clarks River Road, Paducah, KY  42003-0823.  Its registered agent for

service of process is C. Ronald James, who may be served at Defendant's principal business location at 4540 Clarks River Road, Paducah, KY 42003-0823.

4.     Defendant Jamesbuilt, LLC is a Kentucky Limited Liability Company with its principal place of business at 4540 Clarks River Road, Paducah, KY 42003-0823. Its registered agent for service of process is 3300 LLC, which may be served at 3500 National City Tower, 101 South Fifth Street, Louisville, KY 40202.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over the federal claims brought by Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.* and the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, because they raise federal questions pursuant to 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367(a).

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts giving rise to this lawsuit occurred in this judicial district and Defendants conduct business and employed Plaintiff in McCracken County, Kentucky, which is located within this judicial district.

7.     Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission, a copy of which is attached hereto as Exhibit A. Plaintiff received a Notice of Right to Sue from the EEOC with respect to the charges set forth below less than ninety days prior to the filing of this Complaint. A copy of Plaintiff's Notice of Right to Sue letter is attached hereto as Exhibit B.

## DEFENDANTS' JOINT EMPLOYER STATUS

8.      Defendant James Marine, Inc. hired Plaintiff and conducted her initial training.

9.      Defendant James Marine, Inc. subsequently assigned Plaintiff to work for Defendant Jamesbuilt, LLC.

10.     Upon information and belief, Defendant James Marine, Inc. and/or its officers, directors, and/or agents wholly own and control Defendant Jamesbuilt, LLC.

11.     Upon information and belief, Defendant James Marine, Inc. controlled the terms, conditions, and privileges of Plaintiff's employment in conjunction with Defendant Jamesbuilt, LLC.

## FACTUAL BACKGROUND

12.     After applying repeatedly over the course of several years, Defendant James Marine, Inc. hired Plaintiff as a Welder Trainee on or about May 11, 2007.  After successfully completing a one-month training program, Defendant James Marine, Inc. promoted Plaintiff to a Welder position and assigned her to work for Defendant Jamesbuilt, LLC.

13.     Defendants maintain an overwhelmingly male workforce in their non-office positions.  When she was hired, Plaintiff became the first and only female employee to work "on the yard" for Defendant Jamesbuilt, LLC and one of only three or four female employees to work on the yard for Defendant James Marine, Inc. and all of its related companies.

14.     Defendants' welders are required to carry heavy equipment, to pull heavy lines, to shovel coal on barges, and to weld in confined, dirty environments.  During her employment, Plaintiff performed her job competently.  She never asked for or received any assistance or accommodations in performing her work or otherwise sought to be treated differently than Defendants' male welders.

15.     Plaintiff was physically capable of performing the job of welder at all relevant times.

16.     Nevertheless, throughout her employment, Defendants treated Plaintiff less favorably than similarly situated male employees.

17.     Defendants provided a climate-controlled locker room ostensibly for its "yard" employees' use in storing their personal items, changing clothes, and cleaning up when they were dirty.

18.     On her first day of work, Plaintiff put her personal belongings in the locker room and went to the yard to work.  Soon thereafter, however, her boss told her the locker room was only for Defendants' male employees and she could not use it.

19.     Defendants placed a locker for Plaintiff in their tool room.  The tool room had no air conditioning and little ventilation.  The tool room also was not private as other employees often went to the tool room to retrieve tools.  The tool room lacked running water and had no restroom facilities.

20.     Having a locker in the tool room meant Plaintiff, unlike Defendants' male welders, lacked privacy and was subject to the vagaries of weather as she changed clothes.  Plaintiff also could not wash her hands after getting dirty at work as could Defendants' male welders.

21.     Defendants also had a restroom building on the yard for the use of their male employees.  This restroom was climate-controlled and had running water, which male employees could use to clean up during and after the workday.  Defendants also provided multiple portable toilets on the yard for the use of their male employees.

22.     Defendants placed a single portable toilet on the yard purportedly for Plaintiff's use.  This portable toilet was not climate controlled and lacked running water.

23.     Even though the portable toilet was not climate controlled as was the locker room Defendants provided their male employees, Defendants' male employees frequently used the portable toilet allegedly for Plaintiff instead of walking to the male locker room or portable toilets, resulting in cleanliness problems for Plaintiff's use of the facility.

24.     Due to Defendants' failure to provide Plaintiff access to any facility with running water, during her employment, Plaintiff was unable to wash her hands or otherwise to clean up during her workday, before eating lunch, or after her workday.

25.     Plaintiff continued to perform her job well throughout this period.  Still, tensions existed in the workplace, with one management-level employee telling Plaintiff she should not work for Defendants because "other wives" wanted to work there because of her.

26.     In late June or early July 2007, Plaintiff showed signs of pregnancy.  Plaintiff followed her boss's instructions to go to the doctor and then report for work.  When she arrived at work, Plaintiff advised her boss that she was pregnant and that her doctor said she should be on "light duty" work.

27.     Plaintiff's boss said she would have to work in the tool room for a few days while Defendants' management "figured out what to do with" her.

28.     Defendants' Safety Director soon visited Plaintiff in the tool room.  He told Plaintiff that, because she had been "injured at home," Defendants would not place her on light-duty work.  He further told Plaintiff that Defendants had not dealt with pregnancy because Defendants were "a man's world."  The Safety Director forbade Plaintiff to weld, told her to

5

remain in the tool room, and directed her to get a note from her doctor indicating the tasks she could perform.

29.      Plaintiff followed orders and returned to her doctor for advice on what work she could perform.  Her doctor advised her that she could weld so long as she wore a respirator when she did so.  Defendants made respirators available to their employees.

30.      Plaintiff advised her boss that she could weld.  Her boss, however, told Plaintiff that he had discussed the matter with Defendants' higher management, with the latter saying they would not permit Plaintiff to weld because they feared she would miscarry while working on the yard.

31.      Defendant James Marine, Inc.'s human resources director then told Plaintiff it could fire her but, because she was a good worker, would not do so if she agreed to work in the tool room on the night shift.  In order to continue providing for her young daughter and herself during her new pregnancy, Plaintiff agreed.

32.      Plaintiff thereafter went to work in the tool room but had little work to do there. Tool room employees are often required to deliver tools to employees on the yard.  Defendants, however, would not allow Plaintiff to leave the tool room because they feared she would fall.

33.      Being constantly stationed in the enclosed, unventilated tool room during the height of summer, however, soon caused Plaintiff health problems.

34.      Plaintiff's doctor required her to take some time off work because of her heat-related illness.  When this was not enough, in early-August 2007, Plaintiff's doctor placed her temporarily on bed rest to protect her pregnancy.

35.      Plaintiff could have returned to work soon after the bed rest directive. Nevertheless, on August 24, 2007, Defendants terminated Plaintiff.

36.     Plaintiff had not received any warnings or other indications that her work was not satisfactory.

37.     Upon information and belief, Defendant has previously permitted male employees to take time off work to recover from medical conditions pursuant to a doctor's order without terminating such employees.

38.     Defendants' disparate treatment of Plaintiff was because of Plaintiff's sex, because of her pregnancy, and/or because it perceived her as disabled.

39.     The actions of Defendants complained of herein were intentional, willful, deliberate, knowing, and malicious.

40.     As a direct, foreseeable, and proximate result of Defendants' wrongful actions, Plaintiff has suffered pecuniary losses in the form of lost income and lost employment benefits as well as severe emotional distress, emotional pain, suffering, inconvenience, mental anguish, and other non-pecuniary losses, all in an amount to be determined at trial.

## COUNT I

### SEX DISCRIMINATION IN VIOLATION OF TITLE VII
### OF THE CIVIL RIGHTS ACT OF 1964

41.     Plaintiff realleges and incorporates herein the allegations contained in Paragraphs 1 – 40.

42.     Defendants' actions alleged herein constitute discrimination on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

43.     Plaintiff's sex was a motivating factor in Defendants' treatment of her.

44.     Defendants' actions on the basis of Plaintiff's sex were willful and knowingly committed.

45.     As a direct and proximate result of Defendants' adverse treatment of Plaintiff in violation of the Title VII of the Civil Rights Act of 1964, Plaintiff was injured and suffered damages.

46.     Plaintiff has sustained a loss of back pay, benefits, incidental expenses, and front pay.

47.     Defendants engaged in the discriminatory practices alleged in the first cause of action with malice and/or with reckless indifference to Plaintiff's federally protected rights, making Defendants liable for compensatory and punitive damages pursuant to 42 U.S.C. §§ 1981(a) & (b).

## COUNT II

### SEX DISCRIMINATION IN VIOLATION OF THE
### KENTUCKY CIVIL RIGHTS ACT

48.     Plaintiff realleges and incorporates herein the allegations contained in Paragraphs 1 – 47.

49.     Defendants' conduct constitutes illegal sex discrimination in violation of the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010 *et seq.*

50.     As a result of Defendants' conduct, Plaintiff suffered damages.

## COUNT III

### PREGNANCY DISCRIMINATION IN VIOLATION OF TITLE VII
### OF THE CIVIL RIGHTS ACT OF 1964

51.     Plaintiff realleges and incorporates herein the allegations contained in Paragraphs 1 – 50.

52.     Defendants' actions alleged herein constitute discrimination on the basis of pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*

53.     Plaintiff's pregnancy was a motivating factor in Defendants' treatment of her.

54.     Defendants' actions on the basis of Plaintiff's pregnancy were willful and knowingly committed.

55.     As a direct and proximate result of Defendants' adverse treatment of Plaintiff in violation of the Title VII of the Civil Rights Act of 1964, Plaintiff was injured and suffered damages.

56.     Plaintiff has sustained a loss of back pay, benefits, incidental expenses, and front pay.

57.     Defendants engaged in the discriminatory practices alleged in the third cause of action with malice and/or with reckless indifference to Plaintiff's federally protected rights, making Defendants liable for compensatory and punitive damages pursuant to 42 U.S.C. §§ 1981(a) & (b).

## COUNT IV

### PREGNANCY DISCRIMINATION IN VIOLATION OF THE  KENTUCKY CIVIL RIGHTS ACT

58.     Plaintiff realleges and incorporates herein the allegations contained in Paragraphs 1 – 57.

59.     Defendants' conduct constitutes illegal pregnancy discrimination in violation of the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010 *et seq.*

60.     As a result of Defendants' conduct, Plaintiff suffered damages.

## COUNT V

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

61.     Plaintiff realleges and incorporates herein the allegations contained in Paragraphs 1 – 60.

62.     Defendants' actions constitute a violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*

63.     Defendants perceived Plaintiff as disabled and, on this basis, treated her differently than other employees even though she was, at all relevant times, physically and mentally capable of performing all essential functions of her job.

64.     Defendants' discriminatory actions against Plaintiff were willful and knowingly committed.

65.     As a direct and proximate result of Defendants' adverse treatment of Plaintiff in violation of the Americans with Disabilities Act, Plaintiff was injured and suffered damages.

66.     Plaintiff has sustained a loss of back pay, benefits, incidental expenses, and front pay.

67.     Defendants engaged in the discriminatory practices alleged in the fifth cause of action with malice and/or with reckless indifference to Plaintiff's federally protected rights, making Defendants liable for compensatory and punitive damages pursuant to 42 U.S.C. §§ 1981(a) & (b).

## COUNT VI

### DISABILITY DISCRIMINATION IN VIOLATION OF THE KENTUCKY CIVIL RIGHTS ACT

68.     Plaintiff realleges and incorporates herein the allegations contained in Paragraphs 1 – 67.

69.     Defendants' conduct constitutes illegal discrimination on the basis of a perceived disability in violation of the Kentucky Civil Rights Act, Ky. Rev. Stat. § 344.010 *et seq.*

70.     As a result of Defendants' conduct, Plaintiff suffered damages.

## COUNT VII

### PUNITIVE DAMAGES

71.     Plaintiff realleges and incorporates herein the allegations contained in Paragraphs 1 – 70.

72.     Defendants committed the wrongful actions complained of above intentionally, maliciously, recklessly, and/or with knowledge that the actions violated Plaintiff's rights, justifying an award of punitive damages against Defendants.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

1.      That Defendants be served and required to answer within the time prescribed by law;

2.      That a jury of twelve try this cause;

3.      That, upon the trial of this matter, Plaintiff be awarded judgment for damages of the lost compensation she has suffered from the date of Defendants' discriminatory actions, jointly and severally, in an amount to be proven at trial;

4.      That the Court issue an award of front pay in an amount to be proven at trial in lieu of reinstatement because the actions described herein and the circumstances surrounding the place of employment have made reinstatement impossible;

5.      That the Plaintiff be awarded additional compensatory damages, including, but not limited to, damages for emotional distress, pain and suffering, embarrassment, and humiliation, jointly and severally, in an amount to be proven at trial;

6.      That costs and discretionary costs be taxed against Defendants;

7.     That costs and attorneys' fees be assessed against Defendants pursuant to 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 12205, and Ky. Rev. Stat. § 344.450;

8.     That Defendants be ordered to pay punitive damages pursuant to Counts I – VII in an amount to be determined at trial;

9.     That such other remedies as shall be necessary and proper to eliminate all violations complained of herein be awarded as provided by law; and

10.     For such other and further relief as the Court may find appropriate.


Respectfully submitted,


s/ D. Wes Sullenger
D. Wes Sullenger, KY BAR # 91861
            TN BPR # 021714
T. Edgar Davison, TN BPR # 024388 (pro
      hac vice application forthcoming)

Crone & Mason, PLC
One Executive Boulevard, Suite 340-A
Paducah, KY  42001
Voice: (270) 443-9401
Fax:    (270) 443-3624

wsullenger@cronemason.com
edavison@cronemason.com

*Attorneys for the Plaintiff,*
*Heather Spees*