UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:08-CV-00073-TBR

HEATHER SPEES                                                              PLAINTIFF

v.

JAMES MARINE, INC. and                                                   DEFENDANTS
JAMESBUILT, LLC

## MEMORANDUM OPINION

This matter is before the Court upon Plaintiff's Motion for Partial Summary Judgment as to Liability (Docket #17). Defendants have responded and jointly filed a Motion for Summary Judgment (Docket #20). Plaintiff has replied and jointly responded to Defendants' motion (Docket #22). Defendants have replied (Docket #24). These matters are now ripe for adjudication. For the reasons that follow, Plaintiff's motion is DENIED and Defendant's motion is GRANTED in part and DENIED in part.

## BACKGROUND

Plaintiff Heather Spees is a former employee of Defendants James Marine, Inc. ("James Marine") and Jamesbuilt, LLC. Plaintiff was hired by Defendant James Marine on May 11, 2007. Upon completion of a one-month welder training program, Plaintiff was assigned by James Marine as a welder at its Jamesbuilt facility on the Tennessee River in Calvert City, Kentucky. Plaintiff's employment was subsequently controlled jointly by both Defendants.

Plaintiff is female. She began working at the Jamesbuilt facility in early June 2007. At the time, the Jamesbuilt facility was new and partially under construction. Throughout her employment, Plaintiff was the only woman to work at the Jamesbuilt facility. As a welder, she was required to carry heavy equipment over short distances, pull heavy lines, shovel coal on

barges, and weld in confined and dirty environments.

Welders do not arrive to work dressed in their welding gear.  Instead, after receiving their assignments for the day, they use a locker room provided for them at the Jamesbuilt facility to store their personal items and change into their welding gear.  Plaintiff was not allowed to use the locker room.  Instead, she was told to keep her things in a locker located in the tool room.

The tool room is a warehouse where employees check out tools.  The warehouse has a large window and no additional rooms where Plaintiff could change in private.  Plaintiff's locker was located immediately inside the door of the tool room.  Thus, when Plaintiff stood at her locker she was visible to any employee standing in the tool room.

In addition to the locker room, a separate restroom facility was available for male employees.  The facility ran on well water, as a municipal water system had yet to be installed. Plaintiff was not allowed use this facility.  Instead, she was provided with a single portable toilet stationed in the yard.  The portable toilet was located in a high-traffic area.  Thus, male employees who did not want to walk all the way back to their own facility often used it.  As a result, Plaintiff alleges that the portable toilet was often filled to capacity and soiled by the end of the day.  Plaintiff complained of the problem.  At some point, Defendants put a lock on the toilet so that only Plaintiff could use it.

Plaintiff was never provided with a restroom facility with running water.  The tool room also did not have running water.  Because welders work in dirty environments and in the rain, Plaintiff alleges that they visit their lockers often to change their clothing and clean up.  Plaintiff was unable to do this because she did not want to change in front of other employees in the tool room and she did not have a place where she could wash up.  Instead, Plaintiff claims she

brought her own grease cleaner and jug of water to work so that she could wash her hands after using the restroom and before eating her lunch. An outdoor water spigot was available for all employees to use to wash up.

It is unclear exactly when Plaintiff learned that she was pregnant. However, upon discovering so, she informed two of the foremen at the Jamesbuilt facility, Christian Gunder, who is also her brother, and Tony Milam. Milam directed Plaintiff to visit the doctor and return with a doctor's note confirming her pregnancy.

Plaintiff's physician, Dr. Cardenas, informed her that she could work, but that she should wear a respirator when welding. He wrote a note stating that Plaintiff could return to work. Plaintiff alleges that Milam disagreed with the doctor's note. She claims he questioned the note based on both his understanding of the safety risks and his knowledge that Plaintiff had had pregnancy complications in the past. Plaintiff alleges that Milam told her to get another note from her physician specifying whether she could work around welding fumes and carry heavy weights. Plaintiff alleges that, to satisfy Milam, she returned to Dr. Cardenas the same day and obtained a second note stating that she requested light duty and should avoid toxic fumes. Plaintiff claims she never told Milam that she was unable to weld.

On June 19, 2007, Plaintiff's work was restricted to the tool room. On one occasion, Plaintiff alleges that Tom Freeman, head of safety, told her that James Marine was a "man's world," not a place for women, and that she should not weld. Plaintiff claims that Gunder and Milam discussed with her how they could help to ensure her continued employment since they both believed that she could not weld.

Concerned after the comments made to her by Freeman, Plaintiff spoke with Pam

3

Deweese and Chad Walker, both of whom worked in human resources.  Plaintiff alleges that Walker told her that he could fire her, but that she would not be fired if she switched from welding day shifts to working night shifts in the tool room.

Working in the tool room was difficult for Plaintiff.  The tool room was not air conditioned.  As a result, it was hot, dirty, and dusty.  In August 2007, Plaintiff changed physicians.  Her new physician, Dr. Mueller, reiterated her previous physician's warning that she should wear a respirator while at work.

During a period of extremely hot weather, Plaintiff alleges that Milam and another manger told her to seek another doctor's note placing her on medical leave because she was often sick while at work.  Plaintiff alleges that Milam and the manager believed that by doing so Plaintiff could take medical leave and eventually return to work.  On August 16, 2007, Plaintiff obtained a doctor's note placing her on bed rest through the rest of her pregnancy.  Plaintiff claims that she did not want to be on bed rest, but that she agreed to obtain the doctor's note because she believed doing so would ensure her continued employment.

Plaintiff's employment was terminated on August 24, 2007, two weeks after she began her leave of absence.  A termination report prepared by Defendants stated that Plaintiff was eligible for rehire following the delivery of her child.

In her complaint, Plaintiff alleges unlawful discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*., and the Kentucky Civil Rights Act, KRS § 344.010 *et seq*.  Plaintiff alleges five claims: 1) disparate treatment gender discrimination on the basis of discriminatory facilities; 2) disparate impact gender discrimination on the basis of discriminatory facilities; 3) pregnancy

4

discrimination on the basis of discriminatory reassignment; 4) pregnancy discrimination on the basis of discriminatory termination; and 5) disability discrimination.  Plaintiff now moves for partial summary judgment as to liability for all five claims.  Defendant also moves for summary judgment for all claims.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "The mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## ANALYSIS

### I.  Gender Discrimination

Plaintiff alleges that Defendants unlawfully discriminated against her on the basis of her gender when they required her to use inferior restroom and locker facilities compared to those used by male employees.  Plaintiff alleges these claims under both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*., and the Kentucky Civil Rights Act, KRS § 344.010 *et seq*.  Under Kentucky law, gender discrimination claims are analyzed under the Title VII framework.  *Kirkwood v. Courier-Journal*, 858 S.W.2d 194, 198 (Ky. Ct. App. 1993).

"In Title VII actions, 'a plaintiff may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination.'"  *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004) (quoting *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997)).  Here, Plaintiff offers circumstantial evidence of gender discrimination.

Employment discrimination claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Under this framework, the plaintiff bears the initial burden of establishing a prima facie case.  *Grace v. USCAR*, 521 F.3d 655, 677 (6th Cir. 2008).  If the plaintiff meets this burden, then the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action it took.  *Id.*  If the defendant provides a legitimate, nondiscriminatory reason for its action, then the burden shifts back to the plaintiff to show that the defendant's alleged reason is a mere pretext for discrimination.  *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  At all times, the burden of

persuasion remains with the plaintiff.  *Id.*

"Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, permits a plaintiff to base a claim of employment discrimination on two separate theories - disparate treatment and disparate impact."  *Lynch v. Freeman*, 817 F.2d 380, 382 (6th Cir. 1987).  In making her discriminatory facilities claim, Plaintiff argues for relief under both theories.

### A.      Disparate Treatment

Plaintiff argues that Defendants' failure to provide her with adequate changing and restroom facilities comparable to those provided for male employees constitutes intentional gender discrimination.  "To make out a prima facie case for gender discrimination, a plaintiff must show that she was (1) a member of the protected class, (2) subject to an adverse employment action, (3) qualified for the job, and (4) treated differently than similarly situated male employees for the same or similar conduct."  *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004) (citing *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999)).   "To prevail on a claim of disparate treatment a plaintiff must show that her employer intentionally discriminated against her."  *Lynch*, 817 F.2d at 382.   "Intent may be shown by actions taken by the employer that remain unexplained and were more likely than not based on discriminatory criteria."  *Id.*

The parties do not dispute that Plaintiff is a member of a protected class and that she was qualified for her job as a welder.  However, Defendants do dispute that Plaintiff was subject to an adverse employment action and that she was treated differently than similarly situated male employees.  Defendants further argue that Plaintiff cannot show that any actions taken by them were intentionally discriminatory.

7

Title VII prohibits gender discrimination in the terms and conditions of employment.  42 U.S.C. § 2000e-2(a)(1).  "An adverse employment action is a materially adverse change in the terms or conditions of the plaintiff's employment caused by the employer's actions."  *Virostek v. Liberty Township Police Dep't/Trs.*, 14 Fed. App'x 493, 502 (6th Cir. 2001) (citing *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 461-62 (6th Cir. 2000)).  To be materially adverse, "a change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities."  *Id.*  Failure to provide adequate restroom facilities is more than a mere inconvenience, and can constitute an adverse employment action.  *See Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 762 (8th Cir. 2006) (failure to furnish the necessary gear and proper facilities on the basis of sex was an adverse employment action prohibited by Title VII).

Plaintiff states that her inability to change clothing, use a clean restroom, and wash up during breaks significantly disrupted her performance as a welder.  Having reviewed the evidence before it, the Court finds that Plaintiff has sufficiently demonstrated that her employer's failure to provide adequate facilities constituted a material change in the conditions of her employment.  Therefore, the Court finds that Plaintiff has satisfied her burden of demonstrating that she was subject to an adverse employment action.

Plaintiff has also produced evidence showing that similarly situated male employees were treated more favorably than she by having access to better locker and restroom facilities.  Plaintiff offers the deposition testimony of Tony Milam, who states that male employees had access to a private locker room where they could store their clothing and gear, while Plaintiff had to use a locker in the tool room, which lacked privacy.  Male employees had their own

8

restroom facility, whereas Plaintiff had to use a portable toilet.  Milam also describes an initial problem with male employees using and soiling Plaintiff's portable toilet, causing her restroom to be inferior.  Finally, in her own deposition testimony, Plaintiff states that while male employees had access to running water in their restroom, she did not have access to running water at all.  Plaintiff states that she was unaware that an outside water spigot was available for her use.

Defendants do not dispute these differences; instead, they justify the adequacy of their facilities given the limitations at the new Jamesbuilt site, where construction was ongoing.  For example, Defendants offer evidence that the restroom facilities of male employees were "primitive" and "nasty," and no better than those available for Plaintiff.  However, the fact that male employees may have likewise suffered from inadequate restroom facilities does not mean that their facilities were nonetheless different from those provided for Plaintiff.  Plaintiff has offered evidence to demonstrate that she did not have access to running water, while male employees did.  This, combined with Plaintiff's comparable use of a portable toilet instead of a formal restroom, and her use of a locker in an open tool room instead of a private locker room, is sufficient for the Court to find that Plaintiff has established that she was treated differently from similarly situated male employees.  Therefore, the Court finds that Plaintiff has met her prima facie burden.

Defendants have provided a legitimate, nondiscriminatory reason for why they provided the facilities they did for Plaintiff.  In his affidavit, Chad Walker, the Human Resources Director for James Marine, explains that the Jamesbuilt site was not established until 2007, the same year that Plaintiff was hired.  At that time, the facility was still under construction and there was  not

9

yet access to municipal water.  Defendants argue that they were in the process of building a separate restroom and locker facility for female employees and planned to provide access to municipal water for all employees.  In the interim, Defendants provided Plaintiff with a portable toilet and a locker in the tool room.  Defendants have provided evidence that construction on separate female facilities at the Jamesbuilt site was complete in November 2007, two months after Plaintiff was terminated.  Accordingly, the Court finds that Defendants have met their burden of establishing a legitimate, nondiscriminatory reason for their actions.

Plaintiff responds by essentially arguing that Defendants' proffered reason is merely pretext for discrimination.  Pretext can be shown by evidence that the proffered reason (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct.  *Virostek*, 14 Fed. App'x at 503 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).  Here, Plaintiff has produced sufficient evidence to raise a factual question as to whether Defendants' proffered reason has no basis in fact.  In her deposition, Plaintiff states that the only buildings under construction during her employment were work buildings that had no restroom or locker facilities.  (Spees Dep. 31:5-33:11, Sept. 9, 2008.)  She also states that none of the construction during her employment involved running water.  Defendants have offered no direct evidence that they were building comparable facilities for female employees during Plaintiff's employment.  Based on her deposition testimony, a reasonable jury could infer intentional discrimination from the fact that Defendants were not building facilities for female employees.  For this reason, the Court finds that there is a material question of fact as to whether or not Defendants were building restroom and locker facilities for female employees during Plaintiff's employment.  Therefore,

10

the Court finds that Plaintiff has established a prima facie case as to her disparate treatment claim and presented sufficient evidence to raise a question of material fact on the issue of pretext and the ultimate issue of discrimination.

### B.     Disparate Impact

Plaintiff argues that Defendants' policy of providing unequal facilities for female employees had a disparate impact on her, as she was the only female employee at the Jamesbuilt site at the time.  In making this argument, Plaintiff primarily relies on the Sixth Circuit's decision in *Lynch v. Freeman*, 817 F.2d 380 (6th Cir. 1987).  Defendants respond that Plaintiff's disparate impact claim fails as a matter of law because Plaintiff has failed to articulate a facially neutral employment practice.

Disparate impact theory requires "a plaintiff to demonstrate that a facially neutral employment practice falls more harshly on one group than another and that the practice is not justified by business necessity." *Dunlap v. Tenn. Valley Auth.*, 519 F.3d 626, 629 (6th Cir. 2008) (citing *Rowe v. Cleveland Pneumatic Co.*, 690 F.2d 88, 92 (6th Cir. 1982)).  A three-part burden shifting test is used to determine whether disparate impact exists.  *Id.*  "First, the plaintiff must establish a prima facie case of discrimination-i.e., the plaintiff must establish that an adverse impact has occurred."  *Id.*  Then the burden shifts to the employer to show "that the protocol in question has 'a manifest relationship to the employment'-the so-called 'business necessity' justification."  *Id.* (quoting *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971)).  Finally, the plaintiff must show that "other tests or selection protocols would serve the employer's interest without creating the undesirable discriminatory effect."  *Id.* (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 425 (1975)).

11

In *Lynch v. Freeman*, the plaintiff, a female construction worker, argued that female employees were disparately impacted by their employer's requirement that all construction workers use portable toilets instead of restrooms located in a nearby building.  817 F.2d at 384. The district court made extensive findings concerning the conditions of the portable toilets and the adverse affects these conditions had on the health of female employees.  *Id.*  Despite these findings, the district court held that the plaintiff had failed to establish a prima facie case of disparate impact because female employees could have avoided the health dangers associated with using the portable toilets by taking simple measures such as avoiding sitting directly on soiled toilet seats.  *Id.* at 386.

In reversing the district court, the Sixth Circuit explained that it is an unlawful employment practice "to limit . . . employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's . . . sex."  *Id.* at 387 (quoting 42 U.S.C. § 2000e-2(a)). "Any employment practice that adversely effects the health of female employees while leaving male employees unaffected [has] a significant discriminatory impact."  *Id.* at 388.  By showing that females were adversely affected by using the portable toilets and that male employees were not exposed to the same risks due to anatomical differences, the Sixth Circuit concluded that the plaintiff had established her prima facie case.  *Id.*

The Court finds Plaintiff's reliance on *Lynch* misplaced.  In *Lynch*, the Sixth Circuit held that the employer's facially neutral practice of requiring every construction worker to use portable toilets instead of nearby restrooms adversely impacted female employees.  *Id.* at 388. Here, in contrast, Plaintiff argues that she was disparately impacted when she was required to

12

use a portable toilet without running water, as compared to male employees who were given a separate restroom with running water.  The fact that Defendants provided male and female employees with different facilities is not a facially neutral employment action.

Additionally, even if Plaintiff could point to a facially neutral action, she has not demonstrated how she was disparately impacted.  For example, Plaintiff has not presented any evidence that using the portable toilet adversely affected her health and not the health of male employees.  Plaintiff's argument that she was treated differently from male employees goes to her disparate treatment claim, not her disparate impact claim.

For these reasons, the Court finds that Plaintiff has failed to identify a facially neutral employment practice and show how it disparately impacted her.  Accordingly, her disparate impact claim must be dismissed.

## II.      Pregnancy Discrimination

Under the Pregnancy Discrimination Act provisions of Title VII, discrimination because of or on the basis of pregnancy, childbirth, or related medical conditions is defined as a kind of sex discrimination and is prohibited.  42 U.S.C. § 2000e(k).  Pregnancy discrimination claims premised on circumstantial evidence are analyzed under the *McDonnell Douglas* burden-shifting framework.  *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 573 (6th Cir. 2006). To establish a prima facie case of pregnancy discrimination, a plaintiff must show that "(1) she was pregnant, (2) she was qualified for her job, (3) she was subjected to an adverse employment decision, and (4) there is a nexus between her pregnancy and the adverse employment decision." *Id.* (quoting *Prebilich-Holland v. Gaylord Entertainment Co.*, 297 F.3d 438, 442 (6th Cir. 2002)).

13

Plaintiff alleges two claims of pregnancy discrimination.  Her first claim alleges that Defendants discriminated against her when they reassigned her from performing work as a welder in the yard to checking out tools in the tool room after she became pregnant.  Her second claim alleges that Defendants discriminated against her when they terminated her after she became pregnant.  Defendants respond to both claims by disputing that Plaintiff was qualified to perform her duties as a welder once her doctor prescribed work restrictions for her.  Defendants also argue that Plaintiff cannot establish that her reassignment to the tool room was an adverse employment action.  Finally, Defendants argue that Plaintiff's termination claim must fail because she cannot demonstrate that male employees placed on medical restrictions were treated better than she.  Defendants do not dispute that Plaintiff was pregnant.

### A.     Qualified for Her Job

As evidence that she was qualified for her job as a welder, Plaintiff offers her own deposition testimony that her pregnancy posed no impediment to her ability to weld and that she had been released to work by her physicians so long as she wore a respirator.  Defendants respond that Plaintiff was temporarily unqualified as a welder, as evidenced by the deposition testimony of Dr. Cardenas, who stated that he requested that Plaintiff be put on light duty and avoid toxic fumes at her own request.

"For purposes of the prima facie case analysis, a plaintiff's qualifications are to be assessed in terms of whether he or she was meeting the employer's expectations prior to and independent of the events that led to the adverse action."  *Id.* (citing *Cicero v. Borg-Warner Automotive, Inc*., 280 F.3d 579, 585 (6th Cir. 2002)).  Neither party disputes that Plaintiff was qualified for her job as a welder prior to her becoming pregnant.  The fact that Plaintiff may or

14

may not have personally felt that she could perform her duties as a welder while she was pregnant plays no role in the determination of whether or not she was qualified for her job at the time.  Therefore, the Court finds that Plaintiff has met the second element of her prima facie case.

### B.        Reassignment to Tool Room

Plaintiff argues that she was subject to an adverse employment action when she was restricted from working as a welder in the yard and reassigned to working in the tool room checking out tools to other employees.  Defendants argue that Plaintiff's reassignment was not an adverse employment action because it was only temporary and she maintained the same salary and benefits.

An adverse employment action is a "materially adverse change in the terms and conditions" of a plaintiff's employment.  *White v. Burlington Northern & Santa Fe R. Co.*, 364 F.3d 789, 797 (6th Cir. 2004).  A "mere inconvenience or an alteration of job responsibilities" or a "bruised ego" is not enough to constitute an adverse employment action.  *Id.* (citing *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir. 1996)).  Examples of adverse employment actions include termination, failure to promote, suspensions, and a material loss of benefits.  *Smith v. City of Salem*, 378 F.3d 566, 575-76 (6th Cir. 2004).

In the Sixth Circuit, "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Kocsis*, 97 F.3d at 885 (citing *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir.1987)).  "A reassignment without salary or work hour changes, however, may be an adverse employment action if it constitutes a demotion evidenced by 'a less distinguished title, a material loss of

15

benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.'" *White*, 364 F.3d at 797 (quoting *Kocsis*, 97 F.3d at 885).

Plaintiff makes the argument that she was subject to an adverse employment action in a single footnote in her brief. She argues that her reassignment from the yard to the tool room constituted an adverse employment action because she "performed more difficult work in the tool room than she had as a welder." As a welder, Plaintiff argues she had to carry heavy objects over short distances and could use the aid of a forklift; however, in the tool room she had to lift and carry heavy tools. She also argues that she had to work the night shift in the tool room.

Defendants respond that Plaintiff earned the same amount of money working in the tool room as she did welding and she was not deprived of any employment benefit as a result of the reassignment. Defendants also argue that her working conditions actually improved when she worked in the tool room because she did not have to work in the summer heat, climb ladders, breath fumes and coal dust, and wear heavy welding gear. Finally, her reassignment was only temporary.

The Court finds that Plaintiff has failed to show that her reassignment constituted a materially adverse change in the conditions of her employment. While Plaintiff may have performed more difficult work in the tool room, Plaintiff has not shown that this work was adverse, i.e. resulted in materially diminished responsibilities or inhibited her welding training or career advancement. Furthermore, Defendants have shown that Plaintiff's reassignment did not result in any material change in her salary or benefits. For these reasons, the Court finds that Plaintiff has failed to meet her prima facie burden of showing an adverse employment action. Accordingly, her discriminatory reassignment claim is dismissed.

C.     **Termination**

Plaintiff argues that she was unlawfully terminated from her employment after she gave Defendants a doctor's note prescribing bed rest for the remainder of her pregnancy.  Plaintiff argues that she obtained the doctor's note at Defendants' request and that she was otherwise willing and able to continue her work as a welder.

For the reasons explained above, the Court has already determined that Plaintiff has met her burden of demonstrating that she was qualified for her job as a welder.  Defendants now argue that Plaintiff was not qualified for her job because her physician prescribed bed rest for the remainder of her pregnancy.  Defendants cite several Fifth Circuit and district court cases in support of their argument that Plaintiff's doctor's note disqualified her from her job.  However, in all of the cases cited by Defendants the plaintiffs admitted to being unable physically to perform their job duties.  *See, e.g., Rhodes v. Rouse's Enterprises, L.L.C.*, 130 Fed. App'x 678, 2005 WL 1077372, at *1 (5th Cir. 2005) (plaintiff admitted physically unable to perform job); *Delcourt v. BL Development Corp.*, 1998 WL 911785, at *3 (N.D. Miss. Oct. 30, 1998) (plaintiff admitted could not perform her job).  In her deposition, Plaintiff states that she was physically able to continue welding.  Because Plaintiff has made no admission that she was physically unable to perform her duties as a welder, the Court reiterates its previous determination that Plaintiff has met the second element of her prima facie case.

"An employer's decision to discharge an employee is a classic example of an adverse employment action." *Vincent v. Brewer Co.*, 514 F.3d 489, 495 (6th Cir. 2007) (citing *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 n. 2 (6th Cir. 2007)).  Defendants do not dispute that Plaintiff was subject to an adverse employment action when she was terminated from her

17

employment.  Therefore, the Court finds that Plaintiff has met the third element of her prima facie case.

Finally, to establish her prima facie case Plaintiff must show that there is a nexus between her pregnancy and the adverse employment decision.  Evidence of temporal proximity satisfies this requirement, *Asmo v. Keane, Inc.*, 471 F.3d 588, 593 (6th Cir. 2006), as does evidence that similarly situated non-pregnant employees were granted more favorable treatment, *Tysinger*, 463 F.3d at 573.

Here, Plaintiff makes her nexus argument based on the treatment of similarly situated non-pregnant employees, not temporal proximity.  Plaintiff argues that she was treated less favorably than similarly situated non-pregnant employees because (1) Defendants could have given her a respirator, a device they made available for all employees, to wear to work in the yard, and (2) she was ordered to obtain several doctor's notes specifying what acts she could or could not perform, and other male employees were not required to obtain similar notes.  This evidence, however, does not provide a nexus between Plaintiff's pregnancy and her termination.

To satisfy the fourth element of her prima facie case, Plaintiff must "demonstrate that another employee who was similar in her [sic] ability or inability to work received the benefits denied to her." *Tysinger*, 463 F.3d at 574 (quoting *Ensley-Gaines v. Runyon*, 100 F.3d 1220, 1226 (6th Cir. 1996)).  The fact that Plaintiff could have worked in the yard with a respirator does not demonstrate that she was treated less favorably than similarly situated non-pregnant employees.  To meet her burden, Plaintiff would have to show that a male employee was given a doctor's note prescribing work restrictions but then was allowed to continue working in the yard with a respirator.  Likewise, the fact that she had to obtain additional notes from her physician

18

has no nexus to her termination.  To meet her burden, Plaintiff would have to show that a male employee was not required to obtain a similar note and then was allowed to continue working in the yard.  Here, Plaintiff makes neither of these arguments.  As Defendants correctly indicate, Plaintiff has not presented any evidence of a non-pregnant employee who was placed on medical restrictions and then allowed to continue welding.

Nonetheless, having reviewed the record before it and given the Court's duty to construe the facts in the light most favorable to Plaintiff, the Court recognizes the temporal proximity between Plaintiff's pregnancy and her termination.  Plaintiff became aware of her pregnancy sometime in mid-June 2007.  Her employment was terminated on August 24, 2007.  The Court finds that this time period of approximately two months is sufficient to establish a nexus between her pregnancy and termination.  *See Asmo*, 471 F.3d at 594 (holding that a two-month temporal proximity is sufficient to establish a link between plaintiff's pregnancy and her termination for the purposes of a prima facie case).  Therefore, the Court finds that Plaintiff has met her prima facie burden.

### D.    Legitimate, Nondiscriminatory Reason

Having established her prima facie case of discriminatory termination, the burden then shifts to Defendants to articulate a legitimate, nondiscriminatory reason for Plaintiff's termination.  Plaintiff took a leave of absence after her physician prescribed bed rest for the remainder of pregnancy due to an "incompetent cervix."  Defendants explain that as a new hire, Plaintiff was not yet eligible for leave under the Family and Medical Leave Act ("FMLA").  Defendants provided up to two weeks of approved personal leave for employees not eligible for FMLA leave.  Defendants state that Plaintiff was terminated after she exhausted her personal

19

leave and could not return to work per her physician's instructions.  The Court finds that this is a legitimate, nondiscriminatory reason for her termination.

### E.      Pretext

To establish pretext, a plaintiff must prove by a preponderance of the evidence that the defendant's proffered reason is not credible.  *Tysinger*, 463 F.3d at 576.  Again, pretext can be shown by evidence that the proffered reason (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct. *Virostek*, 14 Fed. App'x at 503 (citing *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994)).

Plaintiff argues that Defendants' proffered reason is pretextual because she did not want to be on bed rest and the only reason she obtained a doctor's note prescribing bed rest was because she was led to believe by her managers that doing so would ensure her continued employment.  In her brief, Plaintiff states that "Defendants terminated [her] based on a subterfuge they created - a bed rest note she did not want and which she would not have obtained but for Defendants' misrepresentation that the note was the only way to protect her job." Although Plaintiff does not explicitly say so, the Court understands her argument to be that Defendants were not actually motivated by their proffered reason when they terminated her employment.

In her deposition, Plaintiff states that she obtained a doctor's note prescribing bed rest because her managers told her that doing so would ensure that she received medical leave and job security.  (Spees Dep. 97:18-98:13, Sept. 9, 2008.)  Plaintiff further states that had she known that giving the doctor's note to Defendants would result in her termination, then she

would have simply never given it to them, even if doing so potentially jeopardized her own health or the health of her unborn child.  (Spees Dep. 99:3-100:24.)

The Court finds that Plaintiff's deposition testimony is insufficient to raise an inference that Defendants were not actually motivated by their proffered reason when they terminated her. Plaintiff has offered no evidence from which a reasonable jury could infer that her termination was motivated by discrimination.  Instead, she offers only her own testimony that she would not have obtained a doctor's note prescribing bed rest had she known that doing so would result in her termination.  The fact that she would have not obtained a doctor's note had she known otherwise, however, says nothing about Defendants' intent in requiring her to obtain the note in the first place.  In other words, Plaintiff has offered no evidence to demonstrate that Defendants were motivated by anything other than her physician's directions in terminating her.  For this reason, the Court finds that Plaintiff has failed to established that Defendants' legitimate, nondiscriminatory reason for her termination was pretextual.  Accordingly, her discriminatory termination claim is dismissed.

## III.    Perceived Disability Discrimination

Plaintiff argues that Defendants violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., when they unlawfully perceived her pregnancy as a disability. Plaintiff argues that because Defendants perceived her pregnancy as a disability, they prohibited her from working as a welder in the yard and restricted her duties to checking out tools from the tool room.

Under the ADA, it is unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring,

21

advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A prima facie case of disability discrimination requires that a plaintiff show: "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008) (citing *Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007)).

"Disability" under the ADA is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such an individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A)-(C). A person is not disabled under the ADA if he or she has "impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." *Id.* at § 12102(3)(B).

The Sixth Circuit has yet to address the issue of whether pregnancy itself is a disability. District courts that have considered the issue have overwhelming held that pregnancy is not a disability within the meaning of the ADA. *Gover v. Speedway Super America*, *LLC*, 254 F.Supp.2d 695, 705 (S.D. Ohio 2002) (listing cases); *Jessie v. Carter Health Care Center, Inc.*, 926 F.Supp. 613, 616 (E.D. Ky. 1996) (holding that pregnancy is a "temporary non-chronic condition of short duration which is not a disability under normal circumstances").

Here, Plaintiff does not claim actual disability. Instead, she argues that "the assumption that a pregnant woman cannot work simply because she is pregnant is archaic and prejudicial."

Therefore, she states that a plaintiff may go forward with her "regarded-as-disabled claim" where her employer "bases its limitations of a female employee's work on such archaic perceptions."

Plaintiff cites *Dimino v. New York City Transit Authority*, 64 F.Supp.2d 136 (E.D. N.Y. 1999), in support of her argument.  In *Dimino*, the district court discusses Congress' amelioration of "archaic and prejudicial" disability discrimination under the Rehabilitation Act, not the ADA. *Id.* at 154.  Ultimately, the district court held that the plaintiff had failed to meet her prima facie case because she had presented no evidence that she was perceived as disabled. *Id.*

Here, Plaintiff has presented evidence that Defendants perceived her as unable to perform her duties as a welder because she was pregnant.  However, the Court remains unconvinced that this evidence is sufficient for Plaintiff to proceed on her ADA claim.  Plaintiff has cited no case law in this circuit in support of her argument that evidence of an employer's "archaic and prejudicial" perceptions satisfies her burden of demonstrating a disability.  Furthermore, even if Defendants actually perceived her as unable to perform her duties as a welder based on an "archaic and prejudicial" perception, that perception must nonetheless fall within the parameters of a disability recognized under the ADA.  Because pregnancy has yet to be recognized as a disability under the ADA, the Court finds that Plaintiff cannot satisfy her prima facie burden. Therefore, her ADA claim fails as a matter of law.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion is DENIED.  Defendant's Motion is GRANTED in part and DENIED in part.  Remaining is Plaintiff's gender discrimination

disparate treatment claim.  All other claims are dismissed.

An appropriate order shall follow.